DILLON v. OREGON S. L. & U. N. RY. CO. et al.

(Circuit Court, D. Oregon. March 20, 1895.)

RAILROADS—RECEIVERS—APPOINTMENT—COMITY.

Where a circuit court of the United States has appointed receivers for a railroad which lies only partly within its district, another court, within whose district a portion of the road lies, will, on application, appoint the same receivers,—the portions of the road not being capable of separate management without injury to the road; the appointment of other receivers by the second court not being necessary to the preservation of the rights of lienholders, who object to the receivers appointed; and the grounds of objection not having been presented to the first court as reasons for its removal of the receivers appointed by it and the appointment of others in their stead.

Suit by John F. Dillon, trustee, against the Oregon Short Line & Utah Northern Railway Company and others, to foreclose a mortgage. The American Loan & Trust Company applies for removal of the receivers appointed in such suit.

Winslow S. Pierce, for plaintiff.

John M. Thurston, for receivers.

Moorfield Storey, Joseph N. Dolph, and W. F. Sanders, for petitioner American Loan & Trust Co.

Before GILBERT, Circuit Judge, and BELLINGER, District Judge.

GILBERT, Circuit Judge. An application is made by the American Loan & Trust Company to set aside the appointment of receivers made in the above-entitled cause. The same motion is made on behalf of said company in a suit between the same parties pending in the circuit court of the United States for the district of Idaho, and in the suits of Joseph Richardson, Trustee, v. The Oregon Short Line & Utah Northern Railway Company et al., pending, respectively, in the circuit court of the United States for the district of Idaho and in the circuit court of the United States for the district of Montana, all of which motions, for the convenience of the parties, are heard before the court at Portland.

The Oregon Short Line & Utah Northern Railway Company was formed by the consolidation of other corporations that had been organized and had built railroad lines, and had incumbered the same by mortgages, prior to the consolidation, as follows: The Oregon Short Line Railway Company was incorporated under the laws of the territory of Wyoming on the 14th day of April, 1881. By act of congress of date August 2, 1882, it was made a corporation in the territories of Utah, Idaho, and Wyoming, under the same conditions and limitations, and with the same rights and privileges, which were enjoyed by it under its original articles of incorporation. On the 1st day of November, 1881, it issued first mortgage bonds to the amount of $14,931,000, and secured the same by a mortgage or deed of trust upon its line of road, which extended from Granger, in Wyoming, to Huntington, in the state of Oregon,— a distance of 541.81 miles,—of which mortgage John F. Dillon is the sole trustee. The Utah & Northern Railway Company was organized under the laws of the territory of Utah, and by an act of congress of June 20, 1878, was made a railway corporation in Utah, Idaho, and Montana. On the 1st day of July, 1878, it issued its bonds, of which $4,995,000 are now outstanding, and secured the same by a first mortgage upon the whole of its railroad line, extending from Ogden, in the territory of Utah, to the town of Franklin, in Idaho,—a distance of 80 miles,—and from Ogden, northward through Idaho, to Garrison, in Montana, with a branch from Silver Bow to a point near Butte City, in Montana, 466.61 miles in length. On the 1st day of July, 1886, it executed to the American Loan & Trust Company a second indenture of mortgage upon its railway properties to secure bonds to the amount of $1,831,000. The Utah Southern Railway Company, a corporation of Utah, owned 105 miles of railway extending from Salt Lake City to Juab, in Utah, subject to a mortgage of July 1, 1871, to secure $424,000 in bonds. Upon the 1st day of July, 1879, the road was incumbered by a second mortgage by said corporation to secure bonds to the amount of $1,526,000. The Utah Southern Railroad Extension Company, of Utah, owned 130 miles of railway, extending from Juab, in Utah, to Frisco, in the same state. On July 1, 1879, it mortgaged the same to secure bonds amounting, in aggregate, to $1,950,000. The Idaho Central Railway Company, of Idaho, owned 18.94 miles of railroad, extending from Nampa to Boise City, in Idaho. On the 1st day of January, 1887, it mortgaged the same to the American Loan & Trust Company to secure mortgage bonds to the amount of $130,000. On July 27, 1889, all of said railways above mentioned, together with 45 miles extending from Ogden to Salt Lake, formerly known as the Utah Central Railroad, and 61 miles of road extending from Lehigh Junction to Tintick, in Utah, with a branch from Arlington to Silver City, known as the Salt Lake & Western Railway, and about 40 miles extending from Salt Lake to Terminus, with a branch, formerly called the Utah & Nevada Railway, and about 6 miles from Syracuse Junction, westwardly, in Utah, called the Ogden & Syracuse Railway, were consolidated and united into one corporation, forming the said Oregon Short Line & Utah North-

ern Railway Company, and said company became entitled to all the property and franchises of the said railways so consolidated.

Immediately after the consolidation, and upon the 1st day of August, 1889, the Oregon Short Line & Utah Northern Railway Company mortgaged all of said railways so consolidated, consisting of 1,456 miles, in the states of Wyoming, Idaho, Montana, and Oregon, Utah, and Nevada, to the American Loan & Trust Company, to secure bonds amounting to $10,895,000. Thereafter, and about the 6th day of December, 1889, an agreement in writing was entered into between the Union Pacific Railway Company and the Oregon Short Line & Utah Northern Railway Company, whereby it was agreed that the respective railways of the parties to said agreement should be operated as a continuous line, and, so far as practicable, without change of cars, and that no discrimination, as regards rates or otherwise, should be made against one another in favor of any other line of railway or transportation company, and that all traffic to be received by the Oregon Short Line & Utah Northern Railway Company, to be carried to or by way of any place on the line of the Union Pacific Railway Company, or any railway or lines worked or controlled by it, or worked as continuous lines by agreement with it, should, so far as said Oregon Short Line & Utah Northern Railway Company could lawfully determine the route of such traffic, be carried by way of said Union Pacific Company's railway; and that all traffic received by the said Union Pacific Railway Company, to be carried to or by way of any place or places on the line of said Oregon Short Line & Utah Northern should, so far as the Union Pacific Railway Company could lawfully determine the route, be carried by the said Oregon Short Line & Utah Northern. And it was further agreed that the rates of charges for all descriptions of traffic carried by the railroads of both parties to said agreement, and delivered by one to the other, should be fixed from time to time by the agreement of both of the parties; that the gross receipts therefrom should be apportioned between them according to the distance the same should have to be carried upon the railway or system of each of them. But it was agreed that if the share of the gross receipts received by the Oregon Short Line & Utah Northern upon such apportionment, together with its gross receipts from its local and other business, and from, all of its other sources of income, should be insufficient to enable it to meet and pay its working expenses, taxes, repairs, etc., and also the interest on bonds outstanding against said road and the roads consolidated therein, then the gross receipts from all such traffic should be so apportioned that the Oregon Short Line & Utah Northern should receive sufficient to enable it to meet and pay its said expenses, taxes, repairs, and said interest. Under this agreement the Union Pacific Railway Company took possession of all the railway line of the Oregon Short Line & Utah Northern.

On the 9th day of October, 1893, Oliver Ames, 2d, and others, shareholders of the Union Pacific Railway Company, filed a bill in equity in the circuit court of the United States for the district of Nebraska against the Union Pacific Railway Company, the Oregon

Short Line & Utah Northern Railway Company, and 26 other corporations, in which suit, on the 16th of October, 1893, 8 other corporations were added as parties defendant. In the bill it was alleged that all of the railways mentioned therein were operated by the Union Pacific Railway Company as a unit, so that the same formed one railway and water system, known as the Union Pacific System; that the maintenance of every part of the system was essential to the profitable operation of the remainder; that during the first half of the year 1893 there had been a great falling-off in the revenues of the system, owing to financial depression, prevailing throughout the country, and that there was likely to be still further falling off of said revenues, and that the said company was not able to earn, upon its own railway or upon the said system, sufficient to pay its operating expenses and fixed charges, and that it could not pay its indebtedness, in the ordinary course of business, and that neither the said Union Pacific Railway Company nor any of the other railway companies composing the system would have sufficient funds to pay the interest of their respective mortgage bonds as the same would become due, and that upon default the mortgages securing the same would be subject to foreclosure, and the system would be dismembered, and that thereby ruinous sacrifice would result to every interest, unless the court should deal with the property as a single trust, and take it into custody for the protection of every interest; that the creditors would assert their remedies in different courts in different states and territories, which would prevent the railway company from performing their duty to the government and the public. In the bill it was prayed that the court would administer the entire system, and preserve the unity thereof, and protect the rights of the complainants and all persons interested therein. Upon the filing of this bill it was ordered by the court wherein the same was filed that S. H. H. Clark, Oliver W. Mink, and E. Ellery Anderson be appointed receivers of the said system. A month later two other receivers were added to their number. Similar bills in equity were filed by the same plaintiffs against the same defendants in each of the circuit courts of the states wherein the property of the said Union Pacific System was situated, and the same persons were appointed receivers of the property within the jurisdiction of said courts. On the 28th day of August, 1894, John F. Dillon, the sole trustee of the said mortgages executed by the Oregon Short Line Railway Company, filed in the circuit court of the United States for the district of Wyoming his bill of complaint for the foreclosure of the same, and thereupon, upon his application, the said court appointed the said receivers of the Union Pacific System receivers of all the railroad, appurtenances, and property of the Oregon Short Line & Utah Northern Railway Company embraced in the mortgage, and within the jurisdiction of the district of Wyoming. Upon the 1st day of September, 1894, upon the filing of a like bill by the said trustee in the circuit court of the United States for the district of Oregon, an order was made appointing the same persons receivers of the railroad, lands, property, and franchise of the Oregon Short Line & Utah Northern

Railway Company, covered by said mortgage, within the district of Oregon. On the ——— day of August, 1894, Joseph Richardson, the sole trustee of said mortgage upon the property of the Utah & Northern Railway Company, began a suit in the circuit court of the United States for the district of Idaho against the Oregon Short Line & Utah Northern Railway Company et al., to foreclose the said mortgage; and upon the 31st day of August, 1894, an order was made therein that S. H. H. Clark and others, who were the receivers in the cause of Ames v. The Union Pacific Railway Company, be appointed receivers of so much of the railroad and property of the Oregon Short Line & Utah Northern Railway Company, embraced in said mortgage, as lay within the jurisdiction of said court for the district of Idaho. Upon the 6th day of September, 1894, said Richardson, trustee, filed in the circuit court of the United States for the district of Montana a bill for the foreclosure of all of said mortgaged premises which lay within the district of Montana, and thereupon an order was made therein appointing the same receivers as before. All of these orders appointing receivers of the property of the Oregon Short Line & Utah Northern Railway Company were made without contest, and without notice to the American Loan & Trust Company. But, when the applications for the orders were presented to the courts of the Ninth circuit, the American Loan & Trust Company, having learned that such applications were to be made, informally appeared to request that the appointment of receivers be delayed until it should have time to present its objection to the appointment of the receivers then in charge of the Union Pacific System. The delay was not granted, but the orders were made upon the express permission of the courts that the American Loan & Trust Company might thereafter move for the removal of said receivers and the appointment of others, with the same effect as if the appointments had not been made, and as if the matter were still pending upon the applications of the several trustees of said first mortgages for the appointment of receivers of the Oregon Short Line & Utah Northern Railway Company.

The motions which are now presented to the court, for the purpose of removing said receivers and substituting others, are based upon the general charge that, in the nature of things, it is impossible that the receivers of the Union Pacific Railway System can fairly and impartially administer their trust in such a way as to serve the best interests of the lienholders of the Oregon Short Line & Utah Northern Railway Company; and it is charged that at all times since entering into the traffic agreement of December 6, 1889, the earnings of the Union Pacific System have been sufficient, if applied according to the said agreement, to have carried out its provisions, and thereby to have paid all the expenses, taxes, and repairs of the Oregon Short Line & Utah Northern Railway Company, together with the interest upon its bonds, but that the said traffic agreement had been disregarded, and that the receivers had apportioned the gross receipts in such a manner as they have seen fit, and have allotted to the Oregon Short Line & Utah North-

ern Railway Company only such sum as they have deemed to be its share of the receipts, and have allotted to the Union Pacific Railway Company the remainder, whereby the former company has been unable to pay the interest due upon its consolidated bonds on the 1st of April, 1894.

It is urged that, if the Oregon Short Line & Utah Northern were operated under a management wholly independent of the Union Pacific System, it would be free to enter into traffic contracts with other and competing roads, and that thereby its earnings might be greater than under the present management; and it is insisted that the lienholders of the road have the right to demand that the property over which their liens extend be segregated from the system, since the traffic agreement has been broken, and that it be free to be operated in such a manner that advantage may be taken of its situation and surroundings to earn the greatest possible income for those who are interested therein, and this regardless of the effect that may thereby be produced upon the remainder of the system.

The disposition of these applications must depend upon the effect to be given to the fact that the Oregon Short Line & Utah Northern Railway Company was first taken into receivership by the circuit court of the United States for the district of Wyoming, upon the foreclosure of the Dillon mortgage. That court had unquestionably jurisdiction of the subject-matter and of the parties. It was the proper court for the institution of the suit. The corporation defendant was organized under the laws of Wyoming, and had there its principal place of business. The fact that but a small percentage of its railway lines is within that state is unimportant. The right of the court whose jurisdiction is first invoked over a corporation whose property lies within various districts is not to be measured by the proportionate extent of the property interest in that jurisdiction. There is no rule that the court within whose limits the greater portion of the property is shall be the court of primary jurisdiction. It is sufficient that the corporation had its home in Wyoming, and had a portion of its property there. The legal authority of a receiver extends no further than the territorial limits of the jurisdiction of the court whose officer he is. Within that limit, his right of possession will be respected by all other courts. Without that limit, no court is bound to recognize his authority. But, by a principle of comity, courts whose jurisdiction is exterior to that of the court which appointed the receiver will concede to the latter the right to reduce to his possession and control the property of his trust which may there be found. But this comity will not be extended to the detriment of local creditors of the person or corporation whose property is in receivership. By another rule of comity, equally well established, and universally recognized by the circuit courts of the United States, the action of the circuit court which first acquires jurisdiction of the parties and of the subject-matter of a suit, by the appointment of a receiver, will be respected by the circuit courts of the other districts in which the property of the insolvent is

situated. The rule is not a fanciful one, nor is it based alone upon courtesy, or upon the respect which is properly due from one court to another of co-ordinate power; but it is a rule of utility and convenience, and it rests upon principles of sound policy. Where a railroad extending through different districts is in the hands of the court, either for the purpose of preservation pending litigation, or for the purpose of sale under a foreclosure suit, it is usually necessary that it be treated as an entire system. It is therefore indispensable, in such a case, that the court in which proceedings are first had, and which takes into its possession, by a receiver, that portion of the property lying within its jurisdiction, should draw to itself jurisdiction to make all necessary orders concerning the management of the road pending the litigation, and that its action should, so far as possible, be followed by the other courts in which the property is found. A different rule would, in many instances, lead to conflict and to hopeless confusion, and would involve the disintegration and dismemberment of roads which ought to be managed as a single property. The result would be that such roads would be divided into as many distinct lines as there are courts having jurisdiction over them. Said the court in Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 29 Fed. 620:

"In the early history of foreclosure proceedings of this nature, it became customary, not merely that foreclosure proceedings should be conducted in the one court, but that, to avoid all questions of title, ancillary proceedings should be conducted in the courts of other circuits; and to conserve the property pending the foreclosure, to guard it against local suits, and preserve it from dismemberment, the custom has also been for the receivers appointed in the court of primary administration to be also appointed in the courts of ancillary administration."

The same view has been expressed in numerous cases. Jennings v. Railroad Co., 23 Fed. 569; Young v. Railroad Co., 2 Woods, 618, Fed. Cas. No. 18,166; Continental Trust Co. v. Toledo, St. L. & K. C. R. Co., 59 Fed. 518; New York, P. & O. R. Co. v. New York, L. E. & W. R. Co., 58 Fed. 278. There are two reported cases in which the rule of comity has been disregarded,—the cases of Atkins v. Railway Co., 29 Fed. 162, and Phinizy v. Railroad Co., 56 Fed. 273. In the first of these, the Wabash, St. Louis & Pacific Railroad Company, a consolidated corporation owning lines of railway in several states, had been placed in the hands of receivers by the circuit court of the United States for the Eastern district of Missouri. The receivers were ordered to operate the entire system under the orders of that court, and of other courts exercising ancillary jurisdiction. One of the latter was the circuit court for the Northern district of Illinois, in which the same receivers were appointed in ancillary proceedings. Thereafter, the plaintiff filed a bill in the Illinois court to foreclose two several mortgages made by certain of the consolidating corporations upon roads no part of which lay within the state of Missouri. Upon these foreclosure suits, application was made to the court of the Northern district of Illinois to set aside the order appointing the receivers who had been named by the court in Missouri. Upon such application,

Gresham, J., held that, while he had no authority to review the action of the court at St. Louis, he could not concede to that court paramount jurisdiction over property lying wholly with the state of Illinois, and none of which was within the jurisdiction of the Missouri court; and thereupon he appointed independent receivers of the roads so within his own jurisdiction. In commenting upon that decision, Mr. Justice Brewer, in Central Trust Co. v. Wabash, St. L. & P. R. Co., 29 Fed. 621, said:

"The circuit court of the Seventh circuit district, disregarding the comity which has heretofore existed between the federal courts, has removed these receivers, and appointed a distinguished citizen of the state of Michigan as their successor for the lines within the jurisdiction of that court. I say in disregard of the comity which had existed between courts of different circuits, for, under the pretext of enforcing local liens, said orders are too transparent to deceive any one, and for two reasons: First, there will be no line extending through various states without the creation in those states of local liens by mortgage, judgment, or otherwise; and, secondly, a foreclosure of those local liens may proceed independent of any receivership."

In Phinizy v. Railroad Co., Simonton, J., holding court in the circuit court of the United States for the district of South Carolina, set aside the appointment of a receiver that had been made in his court in pursuance of an order first made in the circuit court of the United States for the Southern district of Georgia; but he rested his decision upon the ground that it was shown that the Georgia court had appointed its receiver at the instance of another company, that controlled the stock of the defendant road, to further the interest of the dominant company's system, and not in the interest of the creditors, and, further, that that court had, in substance, since held that its action in the premises was unauthorized.

If the Oregon Short Line & Utah Northern Railway were susceptible of dismemberment without injury to either portion; if that portion of its line within the state of Wyoming were a separate branch, capable of a separate management; or if the action of this court were necessary to the preservation of the rights of the lienholders by whom the applications are made,—it might be urged that a case is presented which would justify the court, in the exercise of its discretion, to disregard the settled rule of comity. But no such exceptional state of facts exists. There is nothing presented in the record in these cases which makes the general rule inapplicable. The reasons which are urged for the removal of the receivers already appointed, and the appointment of others in their stead, have not been presented to the consideration of the circuit court for the district of Wyoming. That court has had no opportunity to pass upon them. Those reasons are as potent and convincing in that court as in this, and it must be assumed that all courts equally will mete out to the suitor the justice and the relief to which he is entitled. The precedents which establish the rule of comity are as binding as the precedents upon which other rules of law and of practice rest, and they are not the less controlling from the fact that the action of this court in dealing with the question now before it cannot be made the subject of review in an appellate court. Circumstances might

indeed, in certain cases, authorize the court, in the further-ance of justice, to depart from the rule, and to ignore the action of other courts; but what we decide in this case is that, in our judgment, such circumstances are not here presented. The mo-tion will be denied, with leave to the applicant to renew the same after the matters therein involved shall have been submitted to the circuit court of the United States for the district of Wyoming.

BELLINGER, District Judge (concurring). The contention for the petition is that the court has jurisdiction as to all of the lines in question except that portion in Wyoming, and that it ought to exercise that jurisdiction, if convinced that the two trusts with which the single receivership is charged are incompatible; that comity should not refuse justice. But comity is justice. It avoids complications that may embarrass the title to the property in suit, and lessen its value, to the injury of creditors and owners. The object of any receivership is to preserve the property com-mitted to it intact; and the cases requiring it are mainly cases where the danger to be guarded against is the danger that the property will be seized upon under process issued out of different courts, and dismembered, through the contests of rival interests. The interest of a fund in court requires its harmonious adminis-tration. Where the property extends through more than one juris-diction, the courts of such different jurisdictions must act as one court in its administration; and to this end there must necessarily be a court of primary action,—a court of initial proceeding,—whose determination will ordinarily be followed by the other courts hav-ing jurisdiction. The court whose jurisdiction is first invoked becomes, by a rule of comity, the court of primary action in all subsequent proceedings. This rule of comity is not merely a matter of courtesy, as argued in this proceeding. It is a rule tacitly adopted by courts for their mutual convenience. It is a rule of procedure necessary to the due administration of justice in such cases as are under consideration. In view of the contra-riety of judicial opinion,—of the disagreement of courts and the dissent of judges,—it cannot be said that comity between courts involves a refusal of jurisdiction, or a surrender of judicial inde-pendence. It is, in effect, a rule of jurisprudence necessary to a proper administration of a single property like that in suit, extend-ing through different jurisdictions. The rule has its limitations. It does not require that a court of ancillary jurisdiction shall re-fuse those resident within its jurisdiction, and having claims upon the property, the relief to which they are entitled, nor that such court will be precluded, by the decisions of the court of primary jurisdiction, from making an independent inquiry, and granting relief, in a proper case, where a refusal to do so would involve a denial of justice. But these exceptions do not apply in the pres-ent case. So far as appears, this application can as well, as con-veniently, and as effectively be made in the court of primary juris-diction as here.