### BAYNE et al. v. BREWER POTTERY CO.

(Circuit Court, N. D. Ohio. June 16, 1897.)

RECEIVERS—APPOINTMENT AND REMOVAL—ANCILLARY APPOINTMENT—NONRESIDENCE.

A receiver appointed by a federal court in New Jersey for a New Jersey manufacturing corporation whose plant and business are located in Ohio, and subsequently appointed on the commencement of an ancillary suit by a federal court in Ohio, will not be removed by the latter court on the application of mortgage creditors who have subsequently become parties, merely on the ground that he is a nonresident of Ohio, where it appears that he is a fit person to manage the business, and intends to give it his personal supervision.

John K. Rohn and E. W. Tolerton, for the motion.
Hoyt, Dustin & Kelley and Edwin Robert Walker, opposed.

SAGE, District Judge. Samuel B. Sneath, trustee of the first mortgage bondholders under the mortgage made by the defendant, was, upon his own motion, of the 26th of April, 1897, made party defendant in this cause, and on the 1st of May, 1897, filed an answer and cross bill upon the mortgage made to him to secure 60 bonds of $500 each, with 6 per cent. interest, and prayed for a decree of foreclosure. The bill in this case was filed on the 10th of April, 1897, setting up the filing of a bill in the circuit court of the United States in and for the district of New Jersey by the complainants against the defendant, a corporation existing under and by virtue of the laws of the state of New Jersey, having its principal office in the city of Trenton, in that state, seeking a discovery of the goods and chattels, rights and credits, moneys, effects, and real estate, of every kind and description, belonging to the defendant, setting up also the insolvency of the defendant, and praying the appointment of a receiver; and that such proceedings were had in said circuit court upon the

filing of said bill that an order was thereupon made by said court appointing Frederic A. Duggan, of the city of Trenton, county of Mercer, state of New Jersey, receiver of the defendant, to take possession of all its goods and chattels, moneys and effects, land and tenements, books and papers, choses in action, bills, notes, and property of any and every description, and to sell, convey, or assign all its real and personal estate, and pay into court all of the proceeds; also generally to do and perform all the duties imposed upon him required by law and by the course and practice of the court. A copy of said bill is made an exhibit to the bill herein filed, which, although not so designated, was intended to be an ancillary bill. Upon the filing of the bill in this district, said Duggan was, upon motion, appointed receiver; but the court then intimated that, inasmuch as the property within this district was entirely separate and distinct from whatever there might be in the district of New Jersey, this court would proceed upon its own orders and decrees with reference to the sale or other disposition thereof.

On the 6th of May, being 11 days after Sneath was made a party, he filed a motion for the removal of Duggan, receiver, for the reasons:

"(1) That he was originally appointed by order of the circuit court of the United States for the district of New Jersey, and that the defendant, although incorporated under the laws of that state, has no office or place of business or property in that state. (2) That the receiver is a resident of the state of New Jersey, and that all the property, real and personal, of the defendant, is situate in the city of Tiffin, Seneca county, Ohio. (3) That he was appointed without notice to petitioner, who was trustee of the first mortgage bonds, as set forth in his cross bill herein, and without notice to the directors, managers, officers, or other persons interested in the management of said business, and they had no opportunity to be heard. (4) That his appointment was suggested by complainants, who were largely interested in the pottery companies located in New Jersey, competitors of said defendant company, and that he is, and will be, if permitted to remain as receiver, entirely controlled by complainants in the management of said business. (5) That the receiver has no interest in the business of the defendant company, and has no knowledge or experience in the conduct thereof, and since his appointment has taken no interest in the business, and is not qualified to act as such receiver in any respect. (6) That, if the receiver should devote to the business the attention which is required, the expenses incident thereto by reason of his being a nonresident of the state of Ohio, and far removed from the locality of said business and its property, would be greatly increased. (7) That the complainants have a very small interest in said business; and that the petitioner represents, as trustee and otherwise, most of the indebtedness of the defendant company."

On the 22d of May the receiver filed a full and complete inventory of the estate, property, and effects of the defendant company, their nature and value; also an account of the debts due from the defendant company and to the defendant company. It appears from the inventory that the defendant company has on hand manufactured goods of the value of $19,937.76, goods unmanufactured of the value of $3,334.54, goods in process of manufacture of the value of $389.73, and accounts receivable to the amount of $21,167.05, of which $10,-129.50 are considered collectible; and that the indebtedness, exclusive of the principal sums secured by mortgage, is $41,447.31.

The receiver filed with these papers a petition in which is set forth the condition of the real estate of the defendant company, and of its

pottery plant situate thereon, which, it is averred, was closed down and ceased to be a going concern in April, 1897.

The petition further sets forth that for a long time prior to the receiver's appointment the business at the pottery plant at Tiffin was much run down. Its reputation as a business concern was seriously impaired, owing to the making of goods therein poor, crazed, defective, and otherwise imperfect; that the output became practically unsalable; and the pottery, by reason of its having a bad name in the trade, would not sell to advantage to the creditors and stockholders thereof.

After setting forth in detail the condition, and also the possible prospects, of the pottery, to which he claims there is now open a large and unusual market and field of operation in the Western and Southern states, and the opportunity for making said plant and premises, if rehabilitated, a going concern of the first order, with large and quick sales of its goods and output, and profit for the creditors and stockholders, whereas, if the works should be indefinitely shut down, and the property forced to a sale, great loss and sacrifice would result to creditors and stockholders, the receiver prays for an order authorizing and directing him to run and operate the plant and works, and for that purpose that he be authorized and empowered to raise money upon receiver's certificates, not to exceed in the aggregate at any one time $25,000.

Upon consideration of the affidavits filed pro and con, and of the briefs of counsel, my conclusion is that the motion must be overruled. It was urged upon the oral argument that the appointment of the receiver was an improvident one; that is to say, that the presumption was that Judge Kirkpatrick made the appointment upon the suggestion of counsel, without personal knowledge regarding the qualifications or fitness of the appointee. There is no evidence whatever to that effect. The presumption is altogether the other way, and it is supported by abundant evidence that the receiver is thoroughly competent for the position, having practical knowledge of the pottery business, and having had large experience. As to his being a nonresident of the district, that is something which not infrequently happens in cases wherein receivers are appointed; but it appears from the affidavits that the pottery at Tiffin was so unsuccessfully conducted by the parties interested there prior to the receivership that serious losses were entailed; and that both Mr. Sneath, who is now proposed as receiver, and Mr. Brewer, who was then in charge, and is now active in support of the motion, expressed their conviction that it would be better for the interests of all concerned that the New Jersey parties should take charge of and manage the business. It is said to be conceded that no notice was given to the defendant company of the appointment of the receiver. That is wholly incorrect. The record in the case shows that due service was made upon the company through its proper officers in New Jersey prior to the appointment, and that like notice was given of the application to be made in this district for an ancillary appointment.

The claim that the receiver has no interest in the business of the defendant company is not only in itself no objection, but is, on the

other hand, a strong recommendation. By the statute of Ohio, parties interested are ineligible. Although they are not strictly ineligible in equity, disinterested parties, who are competent, are preferred. The overwhelming testimony of the affidavits is that there is nothing in the claim that Mr. Duggan is under the control of persons who have an adverse interest. It does appear that the stockholders in the Trenton Pottery Company are largely interested in the Brewer Pottery Company, but it also appears that they have the most friendly feeling towards that company. There are affidavits containing direct offers to turn over the overflow orders of the Trenton Pottery Company to the Brewer Pottery Company in case Mr. Duggan is permitted to operate the plant of that company, and the true version of the testimony is that there is no hostility nor clashing of interests between the two companies.

It is also claimed that the complainants have no interest in the business as creditors, and a very small interest as stockholders. On the contrary, the bill shows that the complainants have an interest in the business as creditors, sufficient, at least, to give them a standing in this court. The affidavits show that the holders of over $127,000 of the entire one hundred and seventy odd thousand of the capital stock are directly interested in this suit, and in full accord with the complainants.

As to the objection that all the property, both real and personal, belonging to and owned by the defendant company, is situate in the city of Tiffin, Ohio, Mr. High, at page 43 of the third edition of his work on Receivers, says:

"It would seem to be unnecessary that the property constituting the subject-matter of litigation should be within the jurisdiction, provided the parties in interest are subject to its control; and there are frequent instances where the English court of chancery has appointed receivers over assets or property situated in foreign countries."

To the same effect, see Kerr, Rec. p. 124; Beach, Rec. (Alderson's Ed.) § 247. In Bidlack v. Mason, 26 N. J. Eq. 230, the chancellor said:

"On principles of comity the aid of this court will be extended to a receiver of a foreign corporation seeking to obtain possession of the property of the corporation here as against the officers of the corporation who may be endeavoring by fraud or subterfuge to withhold it."

In that case the receiver was appointed by the supreme court of the state of New York for a manufacturing company formed and existing under the laws of that state, and was permitted to take possession of property in Camden, N. J. All the property of the company was in the state of New Jersey, in the company's factory in Camden. See, also, Phœnix Iron Co. v. New York Wrought Iron Railroad Chair Co., 27 N. J. Law, 484. In Bank v. McLeod, 38 Ohio St. 184, Judge Johnson, delivering the opinion of the court, said:

"It is not necessary that the property should be within the jurisdiction of the court. Thus, courts of England have appointed receivers to manage landed property in India, Canada, China, Ireland, South American states, and other places."

See, also, 2 Daniel, Ch. Pl. & Prac. *1731, and cases cited, and Gluck & B. Rec. (2d Ed.) pp. 34, 36. In ancillary proceedings, the

custom and practice is to appoint as receiver the person originally appointed.

"The proceedings attending such ancillary or auxiliary proceedings are those of comity, rather than of compulsion, and invoke harmonious action between courts of different territorial jurisdictions in administering the same estate. The doctrine is one of necessity, occasioned because a court cannot, by its order or decree, affect and control property in another jurisdiction. A feature of ancillary receiverships is that the same person is generally, though not always or necessarily, appointed receiver. Thus his power becomes co-extensive in every jurisdiction wherein he is appointed, and a complete and uniform management of the property is secured." Beach, Rec. (Alderson's Ed.) p. 40, § 28a.

In Rust v. Waterworks Co., 17 C. C. A. 16, 70 Fed. 129, the circuit court of appeals, Eighth circuit, said:

"When the receiver of a foreign corporation, appointed by a court of the state of its creation [New Jersey], presents a petition to a court in another jurisdiction [Colorado] to have a judgment against such corporation opened, and an opportunity to defend the suit, such court has power to authorize him to defend such action in its jurisdiction, as it would have power to appoint him receiver, and authorize him to bring and defend suits generally."

So, in Fost. Fed. Prac. p. 399:

"When a receiver has been appointed by one federal circuit court, the others, through judicial comity, will usually appoint the same person an ancillary receiver of so much of the same estate as is within its jurisdiction."

In New York, P. & O. R. Co. v. New York, L. E. & W. R. Co., 58 Fed. 279, Judge Lurton uses the following language:

"We are not prepared to say that circumstances might not arise which would justify and demand independent action in the appointment of receivers by each court of independent jurisdiction, and even the removal of receivers once appointed. But the respect due by courts of co-ordinate power and jurisdiction to each other, and especially that due by a court whose jurisdiction in a large part is in some sense ancillary to the court of primary jurisdiction,—the court where the rights and equities of all must finally be aggregated, and the accounts of the receivers be adjusted,—demands that a strong case should be made before independent and divergent orders should be made tending to bring on conflict between courts endeavoring to administer the same property in such manner as will best subserve the interests of all interested in it."

As to the increased expenses resulting from the nonresidence of the receiver, that matter will be entirely in the hands of the court, which will see to it that no unreasonable or extravagant charges or expenses shall be allowed.

The defendant company, although operating and having its property in the state of Ohio, is a corporation existing under and by virtue of the laws of the state of New Jersey. That sovereignty having been sought for the purpose of the creation of the corporation with whatever advantages or exemptions have been thereby secured, neither the stockholders, nor the creditors who dealt with it as a New Jersey corporation, ought now to be heard to object to the jurisdiction of the courts located in the state of which it is legally a resident.

Mr. Sneath, who is suggested as receiver, is without practical knowledge or experience in the business. He is president of a bank, and has other matters in charge, which, it would seem, would make it practically impossible for him to give the attention to the business

which would devolve upon the receiver. I am disposed to give a thorough and impartial trial to a new management which promises a favorable and successful outcome, rather than to commit the business to essentially the management which was, up to the time of the receivership, altogether unsuccessful and unprofitable. I do not intend, however, to throw the reins over the neck of the receiver. It is averred that he has declared he would not be able to give his personal attention to the business. This is, however, denied by him. The court relies upon his promise to the contrary. The motion will be denied at the costs of the mover.

An order will be made requiring the receiver to proceed at once to take charge of and operate the plant, to file in court monthly reports showing the state and progress of the business, receipts and disbursements, the number of hands employed, the number of days each month of his presence at Tiffin in the care and supervision of the business, and, generally, whatever may be necessary to enable the court to keep an eye intelligently on his operations.