HENRY SEIBERT *vs.* MINNEAPOLIS & ST. LOUIS RY. CO. *et al.*

Argued June 13, 1894. Affirmed June 28, 1894.

No. 8847.

**Payment justified, to preserve the assets of a railroad company in hands of a receiver.**

Where two railroad companies agreed that each should construct or cause to be constructed a specified part of a continuous line of railroad between two terminal points, and make certain connections, and that each should have the concurrent use of the whole line, and have certain other traffic arrangements with the other, and that this contract should be in force for a certain number of years, the line was so constructed, and, after being so used for some time, a receiver of one of said companies was appointed in a foreclosure suit brought against it. The other company presented a claim for rent, switching charges, expense of handling freight, and other operating expenses, accruing to it under the contract before the receiver was appointed, and the court below ordered the payment of the same by the receiver with interest. *Held* it is fairly to be inferred from the order of the court and other proceedings that the court deemed this contract a valuable asset, and deemed it for the best interest of the estate that the receiver should adopt the contract, and that it was necessary to pay the claim in order to keep the contract in force; it was therefore proper to order the claim paid with interest.

Appeal by plaintiff, Henry Seibert, trustee, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made May 20, 1893, ordering William H. Truesdale, receiver, to pay the claim of the Northern Pacific Railroad Company for $41,891.66 and interest.

This action was brought to foreclose a mortgage given by the defendant, the Minneapolis and St. Louis Railway Company to the Central Trust Company upon its railroad and other property to secure payment of 4,000 bonds of $1,000 each. Henry Seibert was, under the terms of the mortgage, substituted as trustee in place of the Central Trust Company. He commenced this action June 28, 1888, and on the same day William H. Truesdale was appointed receiver and took possession of the railway and assets of the mortgagor. An agreement had been made April 24, 1885, whereby the Minneapolis & St. Louis Railway Company (third party) obtained the

right to use for ninety-nine years certain railway tracks and terminal facilities of the Northern Pacific Railroad Company (first party) and of the St. Paul and Northern Pacific Railway Company (third party) and agreed to pay the first party certain rents and charges. At the time this action was commenced the Minneapolis & St. Louis Railway Company (third party) was indebted under this contract to the Northern Pacific Railroad Company (first party) $41,891.66 and it applied to the court on May 20, 1893, and obtained an order directing the receiver Truesdale to pay this claim out of funds in his hands in preference to the claims of general creditors. From this order the plaintiff Seibert appeals.

*J. M. Shaw* and *Albert E. Clarke,* for appellant, cited *Thomas* v. *Western Car Co.,* 149 U. S. 95; *New York P. & O. R. Co.* v. *New York L. E. & W. R. Co.,* 58 Fed. Rep. 268.

*Tilden R. Selmes* and *J. H. Mitchell, Jr.,* for respondent, cited *Thomas* v. *Western Car Co.,* 36 Fed. Rep. 808; 149 U. S. 95; *Miltenberger* v. *Logansport Ry. Co.,* 106 U. S. 286; *Kneeland* v. *American Loan Co.,* 136 U. S. 89; *Fosdick* v. *Schall,* 99 U. S. 251; *New York P. & O. R. Co.* v. *New York Lake E. & W. R. Co.,* 58 Fed. Rep. 268; *Quincy M. & P. R. Co.* v. *Humphreys,* 145 U. S. 82; *Farmer's Loan & T. Co.* v. *Northern Pac. R. Co.,* 58 Fed. Rep. 257; *Union Trust Co.* v. *Illinois M. Ry. Co.,* 117 U. S. 434; *Huidekoper* v. *Locomotive Works,* 99 U. S. 258.

CANTY, J. The St. Paul & Northern Pacific Railway Company leased its lines of railroad to the Northern Pacific Railroad Company. A part of the property so leased is certain terminal facilities or rights in the property of the Union Depot Company in St. Paul, and certain rights and transfer facilities in the property of the Minnesota Transfer Railway Company, midway between Minneapolis and St. Paul.

The Minneapolis & St. Louis Railway Company owned a railroad running into Minneapolis, and certain side tracks and connections in that city.

Under these circumstances, on April 24, 1885, a tripartite agree-

ment was made between these three railway companies, by the terms of which the St. Paul & Northern Pacific Railway Company (first party) agreed to build for the Northern Pacific Railroad Company (second party) a line from a point in Minneapolis on the west bank of the Mississippi river at Twentieth avenue south to St. Paul, crossing the river on a bridge to be by it erected, and connecting with the transfer tracks of the Minneapolis Transfer Company between the cities, and with the terminal tracks of said Union Depot Company at St. Paul, and whereby said second party agreed to accept the same as a part of such leased system, and whereby the Minneapolis & St. Louis Railway Company (third party) agreed to build a line from its said terminal tracks in Minneapolis, to connect with said line to be built by said first party, so as to make a continuous line of railroad from St. Paul to Minneapolis.

It was further agreed that the second and third parties should each have the use, concurrent with the other, of this continuous line, and for this purpose each leased to the other its part of the line.

The second party also agreed to furnish freight houses and freight facilities for the third party at St. Paul, and to handle its freight there, and the third party agreed to pay the second party certain charges for this work, and also to pay it certain rents and other charges for the rights and privileges it thereby enjoyed.

It was further agreed that this contract should be in force for 99 years from and after June 1, 1886. There were many other provisions and matters of detail in this contract not necessary to be recited here.

There is no clause in the contract forfeiting it in case of a failure of said third party to pay the rents and charges by it to be paid.

Pursuant to the contract, the first and third parties built the continuous line and connections, and the second and third parties entered into the concurrent possession and use of the same, and continued in such use until the 28th day of June, 1888, when the receiver of said third party, the Minneapolis & St. Louis Railway Company, was appointed in this action. In the order appointing said receiver he was ordered "to observe and perform, until otherwise ordered, all obligations assumed by said railway company in

traffic and running arrangements and leases as the same may have been hitherto observed and performed by said railway company, and especially to observe and perform," amongst others, the aforesaid contract. The receiver did accordingly and has since used the property concurrently with said Northern Pacific Railroad Company. On the trial of this action the court below found these facts, with many others not necessary to state, and found that there was due from said Minneapolis & St. Louis Railway Company to said Northern Pacific Railroad Company under said contract the sum of $41,891.66, all of which had accrued before said receiver was appointed. One of the conclusions of law is as follows:

"Twelfth. That the indebtedness of $41,891.66, owing to the Northern Pacific Railroad Company by the Minneapolis & St. Louis Railway Company, being for rentals and other operating expenses of the last-named company for the eight months prior to June 30, 1888, and which should have been paid from the then current income, now should be and will be decreed to be paid from the moneys in the hands of the receiver in preference to the liens of any of said mortgages, with interest from said last-named date." After the filing of the same, the Northern Pacific Railroad Company, being a party to the action, made a motion that the receiver forthwith pay said sum, and from the order granting the motion the plaintiff appeals.

We are of the opinion that the order appealed from should be affirmed. It sufficiently appears that the court considered this contract between the three railway companies a valuable asset, and deemed it for the best interest of the bondholders that the receiver should adopt it and hold it as a part of the mortgagor's system of railway rights and privileges. The circumstances of the case would seem to warrant this conclusion. But, in order to hold it and compel performance of it on the part of the other parties to the contract, it was necessary to perform it on the part of the Minneapolis & St. Louis Railway Company, not only for the time the receiver had the benefit of it, but also for the time prior thereto, when the Minneapolis & St. Louis Railway Company had the benefit of it. It is true that there is no forfeiture clause in this contract. Neither is it necessary to determine whether or not the other parties to it have any remedy in law or equity to declare it

forfeited. This contract is much more than a mere lease, in which the lessor has nothing to do but receive his rent. It requires the constant acts of the Northern Pacific Railroad Company for the Minneapolis & St. Louis Railway Company in handling its freight, doing switching and other work and services for the latter. If the former refuses to perform,—merely refuses to act, and simply remains passive,—it may totally destroy the value of the contract to the receiver and creditors of the latter, which may be a greater loss to them than the cost of redeeming by performing the contract fully.

The cases cited by the appellant are not in conflict with this position. In *New York, P. & O. R. Co.* v. *New York, L. E. & W. R. Co.*, 58 Fed. 268, the lease was not adopted by the court. In the opinion it is said (page 277): "Whether or not the receivers have an option to adopt the lease, and make its terms and conditions obligatory upon them as receivers, and a charge upon the trust fund in their hands, presents quite another question. * * * If the interests of those concerned in the property of the Erie Company, considered as a trust fund in the custody of a court of equity for administration and ultimate distribution according to the rights and equities of each, as fixed when the property was seized by the court, be that a forfeiture of this lease should be guarded against by preventing any default in rent, then the receivers should pay the rents and adopt the lease."

In *Thomas* v. *Western Car Co.*, 149 U. S. 95, (13 Sup. Ct. 824,) the other case cited by appellant, the court also refused to adopt the lease, and found it fraudulent and void for the reason that the same officers controlled both the lessor and the lessee, and the lessee had been made by them to agree to pay an extravagant price as rent. The rights and liabilities of an assignee in insolvency as to a lease to the insolvent are discussed in *Forepaugh* v. *Westphal*, 57 Minn. 121, (58 N. W. 689.)

It is further contended by appellant that, if the principal sum here claimed should be allowed, no interest should be allowed thereon. We are of the opinion that, under the circumstances, the court below had a right to allow interest.

It is well-established practice, at least when made a condition precedent to the appointment of a receiver, to order the payment

by him of current expenses and balances due from the insolvent railroad company for a limited time before the appointment of the receiver. In such cases, interest is not allowed where nothing is preserved by such payment except the good will of the business or the good will of those in some way connected with the company or its business. But this is not such a case. Here something more is to be preserved than good will. For this reason, and because there has been an unreasonable delay in the payment of this claim, we are of the opinion that interest should be allowed.

The order appealed from should be affirmed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 879.)