HIRAM C. TRUESDALE v. FARMERS' LOAN & TRUST COMPANY and Others.[1]

February 15, 1897.

Nos. 10,409—(247).

**Res Judicata.**

An order affecting a substantial right, and appealable, made in determining a motion after a full hearing has been had on a controverted question of fact, and deciding a point actually litigated, is an adjudication binding upon the parties, and conclusive upon the point passed upon.

**Fee of Counsel—Action to Recover.**

In proceedings to foreclose a trust deed covering certain railway property, a trustee named in another deed (a prior lien) was made a party defendant. It appeared by counsel, who attended to its rights and protected

[1] Reported in 70 N. W. 568.

its interests to the end of this litigation.   Upon a petition made by its coun-
sel, which set out in detail the nature and value of all services rendered by
them in connection with the litigation, the court, when rendering its final
decree in the foreclosure proceedings, made an allowance out of the trust
funds for the services rendered by counsel, said allowance being made,
after a full hearing upon the merits, at less than the amount claimed.
Later, counsel procured an order directing the receiver to pay over the
amount so allowed to the petitioner or to its counsel.   The money was then
paid to the plaintiff in this action, one of the counsel.   The court then set
apart out of the trust funds a sum of money sufficient to pay certain inter-
est due upon bond coupons held by the parties whose interests counsel had
represented in the litigation, and also directed that this money be placed
in the custody of defendant the Minneapolis Trust Company.   The plaintiff
then commenced this suit in equity to recover judgment for a balance al-
leged to be due for legal services, and for money expended in and about
the litigation, and to impress a lien for the amount of said judgment upon
the money still in the custody of the trust company.   *Held*, that this money
is a part of the trust funds, and, applying by analogy the rule as to motions
before stated to the order of the court allowing fees in the original litigation,
that the present action cannot be maintained.

### Same—Allowance.

*Held*, further, that the present action does not come within the exception
or proviso in the order directing the receiver to pay over the amount of
the allowance, to the effect that such payment shall not preclude the pe-
titioner or its counsel from recovering compensation for services from the
parties or persons represented by them.

Appeal by Philadelphia Trust, Safe-Deposit and Insurance Company
and other defendants from an order of the district court for Hennepin
county, Jamison, J., denying a motion for a new trial.   Reversed.

*C. D. & Thos. D. O'Brien*, for appellants.

*J. B. Atwater, Jas. W. Lawrence, Keith, Evans, Thompson &
Fairchild,* and *Davis, Kellogg & Severance,* for respondents.

COLLINS, J.   Prior to the year 1888, the Minneapolis & St. Louis
Railway Company executed and issued its bonds to the amount of
$1,100,000, secured by its trust deed, to the defendant the Farmers'
Loan & Trust Company.   The bonds were negotiable, passing from
hand to hand, and some of them are now owned by the defendants in
this action who have taken this appeal.   In 1888 certain litigation was
instituted by Henry Seibert against the railroad company, in which it
was sought to force a foreclosure of the trust deed or mortgage above

mentioned. The Farmers' Loan & Trust Company was made a defendant in that action, and appeared through its attorneys, Messrs. Turner, McClure & Rolston, of New York City, and the plaintiff H. C. Truesdale. The court refused to order a foreclosure of the mortgage held by the trust company, but did decree a foreclosure of certain other subsequent mortgages, under which the property was sold. That action was before this court on several occasions. Seibert v. Minneapolis & St. L. R. Co., 52 Minn. 246, 53 N. W. 1151; 58 Minn. 39, 59 N. W. 822; 58 Minn. 53, 59 N. W. 879;. 58 Minn. 58, 57 N. W. 1068; 58 Minn. 65, 59 N. W. 826; 58 Minn. 69, 59 N. W. 829; 58 Minn. 72, 59 N. W. 828.

In the Seibert suit the court found the amount to which the trust company and its attorneys were entitled, as compensation for their services in that litigation, to be $20,000, making an order for payment, of the import hereinafter stated, and this amount was paid. The bonds held by the appellants ran for 40 years. At the time the interest coupons payable in July, 1893, became due, the plaintiff in this action, Mr. Truesdale, instituted an action at law against the holders of the bonds personally, the parties to that action being the same as the original parties to this action, excepting that the Minneapolis Trust Company and the Farmers' Loan & Trust Company were not made defendants in the first action. The defendants prevailed in the action, and on an appeal to this court an order denying a new trial was affirmed, and judgment was duly entered in favor of the defendants. Truesdale v. Philadelphia T., S. D., & I. Co., 63 Minn. 49, 65 N. W. 133. Prior to the entry of judgment, the garnishee asked to be allowed to deposit the money in his hands into court; and an order was made depositing the money with the Minneapolis Trust Company, one of the defendants of this action, in whose custody it still is, and against the paying out of which a temporary injunction has been issued herein.

Immediately after the entry of judgment in the Truesdale case, and about December, 1895, the plaintiff brought this suit upon the same cause of action against the same defendants, with the exceptions we have mentioned, in equity, however, and asked that he be given judgment for the amount due him on account of his services and expenses, and that said judgment be declared a lien upon the funds in the possession of the Minneapolis Trust Company, and be paid therefrom, and if sufficient funds be not found in the hands of the Minneapolis Trust Company, that the Farmers' Loan & Trust Company be directed to

proceed forthwith to collect from the bondholders the sum remaining
due plaintiff. The defendants who take this appeal appeared and answered, as did also the Minneapolis Trust Company and the Farmers' Loan & Trust Company. The trust companies, however, took
no further part in the defense than to see that no liability attached
to them. On December 14, 1895, after the commencement of this
action, the plaintiff, pursuant to the insolvent laws of the state of
Minnesota, made a general assignment for the benefit of his creditors,
to Cavour S. Langdon. When the case came on for trial, this fact
being suggested to the court, an order was made allowing the assignee and also Messrs. Turner, McClure & Rolston, Mr. Truesdale's associate counsel in the Seibert litigation, to file intervening
complaints, the order further providing that the action should proceed
in the name of the plaintiff, any recovery which might be had to be
paid as the court might afterwards provide.

The decision in the first action brought by this plaintiff was placed
upon the ground that, as the trustee named in the trust deed had employed plaintiff to render the services without stipulating it should not
incur any personal liability, and without professing or undertaking to
create a lien on the trust estate for the value of such services, and, further, that, as the trustee was not insolvent, plaintiff could not recover
of the beneficiaries of the trust estate, but must look to the trustee
for compensation. In this case, brought to enforce an equitable lien
upon the trust funds, the court found that during the progress of the
Seibert case the court made an order directing that the receiver pay
to plaintiff, on account of his services, the sum of $5,000, which was
paid; and that, at the time of the findings of fact and conclusions of law
in that case, there was allowed to the attorneys of the trustee the further sum of $15,000, out of the funds in the hands of the receiver. And
thereafter the court made its order directing the payment of that sum
to plaintiff, to which order we shall hereinafter refer. The payment
was duly made out of the general funds in the receiver's hands, and not
out of moneys to which the bondholders were or could be entitled. It
also found that plaintiff's services in protecting the interests of these
bondholders in the Seibert litigation were of the value of $50,000, and
that he had necessarily expended in and about the matter the sum of
$3,300. Judgment was ordered for the difference between what had
been paid and the value of the services, with the sum so expended, and

this was made a lien on the fund in the hands of defendant Minneapolis Trust Company.    This appeal is from an order denying defendant bondholders' motion for a new trial.

A consideration of the assignments of error which assail the first conclusion of law and the findings upon which it must have been based will dispose of plaintiff's case; a reversal of the order appealed from, with directions to enter judgment in defendants' favor, being inevitable. The conclusion was that plaintiff was not barred from recovering in this action by reason of the allowance made to and accepted by him in the Seibert foreclosure proceedings.

On the trial, defendants introduced in evidence a petition filed in the Seibert foreclosure proceedings by defendant the Farmers' Loan & Trust Company, the trustee named in the trust deed made to secure defendant bondholders.    This petition was made by plaintiff Truesdale and the firm of Turner, McClure & Rolston, intervenors herein, as attorneys for and in behalf of said trustee.    It set forth in detail the interest of the trustee in the Seibert litigation; the employment of these attorneys to protect said interest; the object and purpose of the defense made as against plaintiff Seibert, and also as against an intervening complaint filed in that action by one Griggs; that pending the litigation these attorneys prepared and filed a complaint in an action in which the petitioner, as trustee, was named as plaintiff, for the purpose of foreclosing the trust deed and also papers moving for the appointment of a receiver in said action.    To state it concisely, this petition exhibited in a very circumstantial manner this plaintiff's claim for compensation for himself and Turner, McClure & Rolston in all matters connected with the Seibert litigation; and it included compensation for the services, and for the money expended, upon which plaintiff relied in the present action.    It stated that, by reason of the facts, the petitioner had become liable to its attorneys in the sum of $50,000 for services, and was also liable for the money necessarily expended by them; that such services were of the value of $50,000, no part of which had been paid except $5,000, paid out of the trust funds by order of the court, and of which mention has already been made.    By reason of the statements in the petition, the petitioner prayed for a further allowance of $45,000, and for an order directing the receiver to pay that sum to it, as and for its compensation, and for the liability and expenses so incurred.    To this petition was attached the affidavit of this plaintiff

of the same general import, alleging necessary and proper expenditures in the sum of $1,500. This was supplemented by the affidavit of Mr. Turner, of the firm of Turner, McClure & Rolston, as to the extent and value of the services rendered, including an imperfect memorandum showing items of services rendered in New York from July 10, 1888, to April 12, 1893. Mr. Turner also sought to impress upon the court the fact that, for various reasons, it was a case in which liberal compensation should be awarded counsel, as well as fees to the trustee.

The court acted upon this petition and the attached affidavits, so much of its conclusion of law in the foreclosure proceedings as relates to the allowance of attorney's fees, reading as follows:

"Thirteenth. Upon the showing made to the court in respect to the reasonable charges for attorneys and counsel employed in this action by the several trustees of the different mortgages described in the complaint, there is allowed   *   *   *   to the attorneys and counsel of the Farmers' Loan & Trust Company of New York, defendant, trustee of one of the mortgages, in addition to the sum of $5,000, heretofore allowed and paid to them, the further sum of $15,000."

Later, counsel moved for an order directing the receiver to make this payment, expressly reserving all rights which they might have against other persons for further compensation. On the hearing of this motion, an order of the court was made, directing such receiver to pay over to the trustee or to plaintiff, as its attorney, the sum of $15,000, out of the earnings and income of the property in his hands. This order concluded as follows:

"And it is further ordered and adjudged that such payment to said trust company, or to said Hiram C. Truesdale, its attorney, shall not be construed, and shall not be a waiver of any rights that it or its attorneys may have against the persons or parties whom they represent and have represented in this matter to such further compensation for their services and expenses, respectively, over and above the said amounts so allowed by this court; and that this order is made and any money paid hereunder shall be without prejudice to any such rights."

From an examination of the petition and the affidavits, it is obvious that the whole matter was before the court when it made its conclusion of law in the Seibert case, awarding to plaintiff the additional sum of $15,000, all that it considered the petitioner and its counsel were entitled to on the showing made. The court passed upon the claim for an allowance of $50,000 for the identical services on which this

action was founded. It determined that the trustee was entitled to $20,000 in all, and no more, out of the trust estate, and as compensation for its services. The petitioner, by its counsel, accepted this allowance as in full for his claim against the estate when they applied for and obtained the order directing payment by the receiver. In so far as the trust estate was concerned, it is apparent that this was a final adjudication of the claim for attorney's fees, and that the proceeding as conducted and concluded was a bar to a distinct and independent action to recover additional compensation for the same services. The application and petition for fees and allowances in the Seibert case were analogous to a motion in the ordinary civil action.

In the case of Heidel v. Benedict, 61 Minn. 170, 63 N. W. 490, it was stated that the determination of a motion is not res judicata, so as to prevent the parties from drawing the same matters in question again in an action. But on petition for reargument it was said that, possibly, this statement was too broad, and not universally true under our practice. The correct rule is that in the case of an order affecting a substantial right, and appealable, when a full hearing has been had on a controverted question of fact, the decision of a point actually litigated upon the motion is an adjudication binding upon the parties, and conclusive to that extent. Dwight v. St. John, 25 N. Y. 203; Riggs v. Pursell, 74 N. Y. 370. This rule is directly applicable to the facts in the case at bar, and precludes the maintenance of an action designed to reach any part of the trust funds.

The question therefore is, was this such an action? Of this there can be no doubt, for replying to the contention of defendants' counsel that the funds upon which plaintiff is trying to impress a lien for services are not part of the trust estate, but have been set apart, and are now the individual property of the owners and holders of the interest coupons for the payment of which the court has directed that they be appropriated, counsel for plaintiff insist that it is nothing more than a proceeding or an independent action to enforce equitable rights in a fund still in the possession or under the control of the court, as a part of the trust estate. The very foundation of their case, whether it is a proceeding in the Seibert case or an original action, independent of that, is based upon the contention that the funds upon which a lien is sought are quite as much under the dominion of the court as they were prior to the making of the order setting them apart for a specified purpose. So

that the case is precisely in the situation it would have been had it been instituted before that order was made.

But it is urged that the order of the court upon which plaintiff received the allowance of $15,000 expressly provided that payment should not be construed, and should not be a waiver of any rights that the trustee or its attorneys might have against the parties or persons whom they represented in the Seibert action, and hence this action may be maintained.    There would be much force in this claim if this action was against the parties or persons so represented.    But, as we have said, it is not.    It is a proceeding to reach the funds in the hands of the court as part of the trust estate, and does not come within the exception provided for in the order.    It is not an action to recover the balance due for services from the parties or persons the attorneys represented in the Seibert litigation.

To conclude:    If the funds are still a part of the trust estate, plaintiff is barred by the final order of allowance; and, if the funds in question do not belong to that estate, the plaintiff has no lien upon them which he can enforce in a court of equity.

The order is reversed, and, upon remittitur, judgment will be entered in the court below in favor of defendants.

## On Application for Rehearing.

### April 15, 1897.

PER CURIAM.    Counsel for respondents, in his petition for reargument, urges that the trust fund out of which attorney's fees were allowed to him in the Seibert case was the general fund in that case, not any fund which belonged to these defendants, while in this case respondents are proceeding against the fund of these defendant bondholders, the trust fund procured for them by the services of Truesdale, and that the order allowing attorney's fees out of one trust fund is no bar to an application for the same attorney's fees out of another and different trust fund.

It seems to us that in taking this position counsel does not take into consideration all of the facts.    Truesdale's application in the Seibert case was not for attorney's fees out of any particular fund.    In granting the application the court could have allowed him attorney's fees out

of the general fund, or out of the fund to be taken from such general fund, and applied on the interest claim of these bondholders; or the court could have allowed such fees partly out of each fund, or it could have allowed them, and left it to be determined in the future as to how they should be apportioned between the two funds. In that application, Truesdale presented all his equitable rights against both funds, and both funds were within the control of the court in that proceeding. There is nothing to show that the court did not award him all that it considered that he was entitled to receive out of all the different funds in court. The mere fact that the court ordered it paid out of the general fund does not, as contended by counsel, show that the court only awarded him what it considered to be the benefit or value of his services to all parties interested in that fund. The evidence discloses but little which Truesdale did that was beneficial to the general fund, and the reasonable value of that little was nowhere stated. His client's interest was hostile to that of those who procured the general fund, and his services consisted mainly in protecting his client's interest, and obtaining a share of that fund to pay interest on the bonds secured by the trust deed under which his client is trustee. That trust deed provides for the payment of attorney's fees and other expenses incurred by the trustee, and from the circumstances we held in this case that the court allowed Truesdale all it deemed him equitably entitled to receive out of any and all funds in court, and ordered the amount so allowed to be paid out of the general fund. This exhausted his equitable rights against the interest money ordered paid to these defendant bondholders, just as much as if the amount awarded him was ordered paid out of that money instead of out of the general fund. If the court erred or abused its discretion in awarding him too small an amount, his remedy was by appeal; the decision is none the less conclusive.

Counsel further contends, that if respondents are entitled to no other equitable relief, they should be given judgment requiring and compelling the trustee to collect the amount of plaintiff's compensation from the defendant bondholders. When and under what circumstances, if any, such an equitable remedy would be allowed, we need not consider. Truesdale presented his petition for the full amount claimed to be due him, and asserted his rights in the usual and most appropriate equitable proceeding in such a case. The court had power to grant

him full relief, and award him all that was equitably due him. He obtained relief which, in our opinion, is a bar to his asserting those rights in the manner now proposed.

The petition for a reargument is denied.