WINNIFRED B. ATWOOD AND OTHERS v. DONALD S. HOLMES AND OTHERS.[1]

June 10, 1949.

No. 34,903.

---

[1]Reported in 38 N. W. (2d) 62.

38

See, 224 Minn. 157, 28 N. W. (2d) 188; 227 Minn. 495, 35 N. W. (2d) 736.

*Holmes, Mayall, Reavill & Neimeyer,* for appellants.

*James J. Courtney and Son* and *P. A. Burke,* for respondents.

MATSON, JUSTICE.

Appeal from an order directing defendant trustees to pay $10,000 to petitioners, James J. Courtney and Son and P. A. Burke, as attorneys' fees.

The legal services were performed by petitioners as attorneys for Winnifred B. Atwood, who as plaintiff (in her own behalf as the surviving spouse of one of the trust settlor's children and in behalf of three minor grandchildren) brought a declaratory judgment action to secure an interpretation and construction of the trust instrument. The facts and specific nature of this litigation are set forth in our prior decision in In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. (2d) 736 (see, also, Atwood v. Holmes, 224 Minn. 157, 28 N. W. [2d] 188), wherein this court affirmed an allowance of attorneys' fees to Arthur G. Ryan, administrator of the estate of Roland H. Tietze, deceased, who had been joined as a defendant in the declaratory judgment proceeding and who therein appealed to this court.

Petitioners performed their legal services in the declaratory judgment proceeding before the trial court by procuring an order bringing the trust under the jurisdiction and supervision of the court and in preparation and appearance for argument before the supreme court in the appeal taken by Arthur G. Ryan.

Petitioners filed two separate and distinct petitions with the trial court for orders allowing, and directing the defendant trustees to pay, a reasonable sum for their legal services, on the theory that such services were of primary benefit to the entire trust in securing a clarification of the trust instrument. Each petition alleged the services to be reasonably worth $10,000. The first petition, which covered all legal services rendered prior to and during the year 1945 and did not include services thereafter performed, was heard on January 3, 1947, before the Honorable Edwin J. Kenny, who by order dated April 30, 1947, allowed for such services in the construction of the trust instrument the sum of $2,000 and the further sum of $200 for services in procuring an order bringing the trust under the court's jurisdiction and control. No action was taken by petitioners for a modification of, or for an appeal from, Judge Kenny's order, and said sum of $2,200 was paid to and received by them.

Thereafter, petitioners presented a second petition for the allowance of attorneys' fees which specifically referred to and included the same legal services which were set forth in the first petition, plus certain additional services performed subsequent to the year 1945. This second petition, which expressly admitted the prior allowance and payment of $2,200 for legal services, alleged "that the reasonable value to the estate of your petitioners services in connection with the trust, is $10,000, and that the expenditures in connection therewith is $150." It was heard on March 10, 1948, before the Honorable Mark Nolan, who by order dated October 7, 1948, allowed as reasonable attorneys' fees for such services the sum of $10,000 in addition to the prior allowance of $2,200 made by Judge Kenny.

We need consider only two issues: (1) Was the prior order of Judge Kenny *res judicata* as to the reasonable value to the trust estate of all legal services rendered prior to and during the year 1945? (2) May the issue of *res judicata* be presented in these proceedings for the first time upon appeal? The issue of whether a reasonable allowance of counsel fees may be made to necessary parties to litigation for the construction of an ambiguous trust instrument when such litigation is of primary benefit to the trust as a whole has already been determined in our prior decision of In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. (2d) 736.

Clearly, the second petition for attorneys' fees, as well as the order of the trial court thereon, covered all legal services performed by petitioners in the declaratory judgment proceeding, and with respect to all other trust matters. No attempt was made to segregate the services performed prior to or during the year 1945 from those rendered thereafter. In short, the services which Judge Kenny's order determined to be of the reasonable value to the trust estate of $2,200 were again, in some unknown degree, embraced in the allowance of $10,000 made by the second court order. The attorneys who testified to the value of the legal services made no effort—and were not asked—to distinguish between the services for which Judge

Kenny had already adjudicated a reasonable value and allowance and those services which were performed thereafter. A second allowance could not be made for services already adjudged to be paid. If petitioners had reason to question the sufficiency of the allowance made in Judge Kenny's order, they should have sought a modification thereof by motion or other form of direct attack. In re Trusteeship Under Will of Melgaard, 200 Minn. 493, 503, 274 N. W. 641, 647. The order affected a substantial right of petitioners and was appealable. It could not be questioned or modified in a collateral proceeding. An order affecting a substantial right, and appealable, made in determining a motion after a full hearing has been had on a controverted question of fact, and deciding a point actually litigated, is an adjudication binding upon the parties in a subsequent action and is conclusive upon the point actually litigated and determined.[2] Specifically in point, with respect to the legal services for which compensation was allowed by the prior order of Judge Kenny, is our decision in Truesdale v. Farmers' L. & T. Co. 67 Minn. 454, 460, 70 N. W. 568, 570, 64 A. S. R. 430, where we said:

"* * * In so far as the trust estate was concerned, it is apparent that this was a final adjudication of the claim for attorney's fees, and that the proceeding as conducted and concluded *was a bar to a distinct and independent action to recover additional compensation for the same services.*" (Italics supplied.)

▆▆▆▆ The issue of *res judicata* was not litigated before the trial court and is raised for the first time on appeal. Behind the issue of *res judicata* is the fundamental issue of the illegality of subjecting a trust estate to liability for a second payment for legal services already adjudicated to have been paid. As an exception to the general rule that litigants are usually bound upon appeal by the theory or theories, however erroneous or improvident, upon which the case was tried below, the appellate court has a duty to,

[2]Truesdale v. Farmers' L. & T. Co. 67 Minn. 454, 70 N. W. 568, 64 A. S. R. 430; Fitterling v. Welch, 76 Minn. 441, 79 N. W. 500; In re Trusteeship Under Will of Melgaard, 200 Minn. 493, 274 N. W. 641; 4 Dunnell, Dig. & Supp. § 6510.

and upon its own motion may, consider and determine a case upon the ground of illegality, although such ground was neither presented to nor considered by the trial court, if such illegality (a) is apparent upon undisputed facts, (b) is in clear contravention of public policy, and (c) if a decision thereon will be decisive of the controversy on its merits, Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44; Hart v. Bell, 222 Minn. 69, 23 N. W. (2d) 375, 24 N. W. (2d) 41. An issue of illegality not presented to the trial court, though it involves a mere error of law, may be considered for the first time on appeal if it involves a controlling legal principle or statute which, with respect to undisputed facts, the courts are judicially bound to know. Failure to present to the trial court that of which it is charged with judicial knowledge does not preclude its consideration for the first time upon appeal. Fourth Nat. Bank v. Francklyn, 120 U. S. 747, 751, 7 S. Ct. 757, 759, 30 L. ed. 825, 827. A sound public policy imposes a positive duty upon the courts to exercise an affirmative vigilance in protecting trust estates from depletion through unnecessary or illegal expenditures. See, In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. (2d) 736. In the exercise of their supervisory function over the administration of trust estates, courts are charged with judicial knowledge that the same services may not be paid for twice through the allowance of a second payment after a prior payment for their full reasonable value has theretofore been adjudicated as final. Where upon undisputed facts disclosed by the record the trial court is fully informed that pursuant to a prior and final adjudication the reasonable value of services to the trust estate has been determined and paid for, the affirmative defense of *res judicata* as a bar to a second allowance and payment for the same services is within the judicial knowledge of the trial court, and may, if ignored or overlooked by the trial court, be considered for the first time upon appeal.[3]

---

[3]The custodial duty of courts in supervising trust estate administration is fundamentally in many respects analogous to the jealous protection extended to infants whose rights will be protected by an appellate court even though such rights were not asserted by their guardian in the trial court. See, Parken v. Safford, 48 Fla. 290, 37 So. 567; Barrett v. Moise, 61 S. C. 569, 39 S. E. 755; Annotation, Ann. Cas. 1913B, 443; 40 Harv. L. Rev. 997.

The instant case satisfies the three-phase test embraced in the exception to the general rule and clearly involves a failure to apply a legal principle of which the trial court is charged with judicial knowledge: (a) The existence of illegality clearly appears, in that the express terms of the two petitions and court orders pertain at least in part to the same legal services. The trial court was judicially bound to know that a second allowance could not be made for services which had already been adjudicated as paid as disclosed upon the face of the record. (b) It is in contravention of public policy to authorize the expenditure of trust funds in payment of services which have already been adjudicated as paid. Trusts are created for and are to be administered in the carefully guarded interest of the ultimate beneficiaries who ultimately pay all expenses of trust administration. Blackhurst v. Johnson (8 Cir.) 72 F. (2d) 644; Newton v. Consolidated Gas Co. 259 U. S. 101, 42 S. Ct. 438, 66 L. ed. 844. (c) Although the illegality of making a second allowance of fees for services which theretofore had been adjudged as paid is raised for the first time on appeal, a decision based thereon will be decisive of the controversy on the merits with respect to the allowance for the services which are actually in dispute, namely, all legal services rendered prior to and during the year 1945.

It is idle to speculate how much of the $10,000 allowance made by the trial court in its second order pertains to legal services covered by the prior order of the court. The order appealed from is reversed and the matter is remanded to the trial court to ascertain, *in the exercise of a sound and cautious discretion* and subject to the principles embodied in our prior decision in In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. (2d) 736, the reasonable value *to the trust estate* of any legal services performed by petitioners in addition to and beyond those services for which they have already been paid pursuant to the original and prior order of the court. A reasonable allowance may also be made with respect to reasonable and necessary expenditures made in behalf of the trust estate.

Reversed with directions.

PETERSON, JUSTICE (specially concurring in part and dissenting in part).

I concur in the result; but I dissent from the view that the order of the court making a second allowance of attorneys' fees was illegal. The making of the second allowance of attorneys' fees involved no illegality within the true meaning of that word. It involved error, but not illegality—it was not illegal because it was erroneous.

FRANK T. GALLAGHER, JUSTICE (specially concurring in part and dissenting in part).

I agree with Mr. Justice Peterson.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.

---

[1]Reported in 38 N. W. (2d) 60.