#27449-a-LSW

**2016 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TRI-CITY ASSOCIATES, L.P.,                    Plaintiff and Appellant,

    v.

BELMONT, INC., a
South Dakota Corporation
and JOSEPH Z. ERBA,                           Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Judge

* * * *

MARK F. MARSHALL of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota            Attorneys for plaintiff
                                    and appellant.


STAN H. ANKER
JORDAN D. BORDEWYK of
Anker Law Group, PC
Rapid City, South Dakota            Attorneys for defendants
                                    and appellees.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015
REASSIGNED
FEBRUARY 17, 2016
OPINION FILED **06/01/16**

#27449

WILBUR, Justice (on reassignment).

[¶1.] In this second appeal, Tri-City Associates, L.P. argues that the circuit court erred when it entered a judgment in favor of Belmont, Inc. In *Tri-City Assocs., L.P. v. Belmont, Inc.* (*Tri-City I*), we had reversed and remanded the case for the circuit court to enter "findings of fact and conclusions of law on the effect of Belmont's failure to give notice of breach and an opportunity to cure." 2014 S.D. 23, ¶ 24, 845 N.W.2d 911, 918. We did so because the circuit court did not address whether Belmont's claims were barred for Belmont's failure to follow the notice-and-cure provision in the parties' written lease. We stated that the "court's failure to address the notice-and-cure issue is problematic because some courts have concluded that the failure to abide by a notice-and-cure provision precludes judicial relief." *Id.* ¶ 22. On remand, the circuit court entered supplemental findings of fact and conclusions of law. It interpreted the notice-and-cure provision to allow for substantial compliance and found that Belmont substantially complied. It also found that Tri-City had actual notice of its material breaches and an opportunity to cure. Alternatively, the court concluded that, by bringing suit against Belmont, Tri-City repudiated any intention to perform its obligation under the lease and made futile the requirement that Belmont strictly comply with the notice-and-cure provision. It entered a judgment in favor of Belmont. Tri-City appeals. We affirm.

## Background

[¶2.] Tri-City owned and operated the Northgate Shopping Center in Rapid City, South Dakota. It entered into a written lease agreement with Belmont in April 2006 for unfinished commercial space. The unfinished commercial space

-1-

required substantial initial construction work before the lease was to begin on August 1, 2006. A "work letter" attached to the lease allocated the initial construction work between Tri-City and Belmont. The lease also contained a provision that required Belmont to give written notice to Tri-City of any alleged breach and give Tri-City the opportunity to cure any breach within 30 days.[1] Under the terms of the lease, Belmont could not avail itself of the remedies available under the terms of the lease at law or in equity until Tri-City had been afforded the opportunity to cure.

[¶3.] The parties experienced considerable difficulties in completing the terms of the lease. Tri-City proposed to move the start date of the lease to January 15, 2007. Belmont did not respond to the requested modification. Ultimately, Tri-City did not deliver the premises to Belmont on August 1, 2006, in the condition required under the lease and did not complete its allocated initial construction work.

---

1. The provision reads as follows:

> Landlord shall be in default under this Lease upon . . . (b) the failure of Landlord to observe, keep or perform any of the other terms, covenants, agreements or conditions contained in this Lease on the part of the Landlord to be observed or performed and such failure continues for a period of thirty (30) days after written notice by Tenant to Landlord or, if such failure is not reasonably susceptible to cure within thirty (30) days, then within a reasonable period of time so long as Landlord shall have commenced to cure such failure within such thirty (30) day period and shall thereafter diligently pursue such care to completion. Tenant may not exercise any remedies available to it under this Lease, at law or in equity until Landlord has been afforded the cure periods described in this Paragraph 48 and any Lender shall have been given notice and afforded the cure periods described in Paragraph 30 above.

[¶4.] After Belmont did not pay rent for the first few months of the lease, Tri-City served Belmont with a notice of default under the lease. A month later, Tri-City served Belmont with a notice to quit and vacate and, in April 2007, sued to evict Belmont. Belmont answered and asserted that Tri-City materially breached the lease, which Belmont asserted relieved it of its duty to pay rent. Then, in October 2007, Belmont counterclaimed for damages for Tri-City's failure to perform under the terms of the lease. Tri-City responded to Belmont's counterclaim that Belmont agreed to accept the premises "as is." Tri-City also argued that Belmont failed to provide Tri-City with written notice of Tri-City's alleged breach and did not give Tri-City an opportunity to cure as required by the notice-and-cure provision in the lease.

[¶5.] After a court trial on April 23-24, 2013, the court issued findings of fact and conclusions of law. It found that Tri-City breached the lease by failing to complete the required initial construction and deliver the premises in broom clean condition. To the court, Tri-City's breach constituted a material breach because Tri-City's "failures and delays defeated the very object of the Lease[.]" The court concluded that Tri-City's material breaches excused Belmont's duty to pay rent and excused Belmont's "default of the terms and conditions of the Lease[.]" The court held that "because [Belmont's] actions are excused," Tri-City "is not entitled to damages." However, the court concluded that Belmont "suffered substantial losses because of [Tri-City's] material breach" and awarded Belmont a judgment against Tri-City in the sum of $89,220.67. The court also awarded Belmont reasonable attorney's fees and costs because the terms of the parties' lease allowed for such an

award to the prevailing party. The court did not enter any findings of fact or conclusions of law regarding the effect of lease provision requiring Belmont to give Tri-City written notice of default. Tri-City appealed to this Court.

[¶6.] On appeal, Tri-City did not dispute that it materially breached the parties' lease. It asserted that "Belmont's defense and counterclaim were barred as a matter of law by: (1) the lease provision in which Belmont accepted the premises as is, and (2) Belmont's failure to give Tri-City notice of its alleged breach and an opportunity to cure." *Tri-City I*, 2014 S.D. 23, ¶ 8, 845 N.W.2d at 914. From our review of the parties' agreement, we concluded that "[a] harmonious reading of all provisions reflects that the as is clause did not abrogate Tri-City's post-execution obligations to perform initial construction and to deliver the premises in broom clean condition." *Id.* ¶ 14. We, however, remanded the case because the circuit court did not address the effect of the notice-and-cure provision on Belmont's counterclaim. We directed the court on remand to enter "findings of fact and conclusions of law on the effect of Belmont's failure to give notice of breach and an opportunity to cure." *Id.* ¶ 24.

[¶7.] On remand, the circuit court did not take additional evidence. It issued supplemental findings of fact and conclusions of law. The court ruled that "[t]he intent of the notice and cure provision of the Lease was to provide a breaching party with notice that it is in breach of the lease and provide that party with an opportunity to cure the breach." The circuit court held that Belmont "substantially complied with the 'notice-and-cure' provisions of the Lease," that Tri-City "had actual notice that it was in breach of the Lease," and that Belmont "provided [Tri-

City] with an opportunity to cure the breach." Alternatively, the court concluded that "[b]y filing suit against [Belmont] for possession of the premises, [Tri-City] repudiated the Lease and any intention to perform under the Lease." The court held that Tri-City's "repudiation of the lease absolved [Belmont] of any obligation to provide [Tri-City] notice of breach and opportunity to cure breach as [Tri-City] had made its intention not to perform under the Lease unequivocal." The court again entered a judgment in favor of Belmont for damages, plus interest, attorney's fees, and costs.

[¶8.]     Tri-City appeals and raises the following issue for our review: Did the circuit court err as a matter of law by entering a judgment in favor of Belmont?

**Standard of Review**

[¶9.]     We review both the circuit court's conclusions of law and its interpretation of the contract de novo. *Tri-City I*, 2014 S.D. 23, ¶ 9, 845 N.W.2d at 915 (citing *Poeppel v. Lester*, 2013 S.D. 17, ¶ 16, 827 N.W.2d 580, 584).

**Analysis**

[¶10.]     Tri-City asks this Court "to view the issue on remand within the appropriate context"—that Tri-City's default, if any, was not material. Tri-City then directs this Court to multiple failings and defaults by Belmont under the terms of the lease. Tri-City also claims that the circuit court's findings "do not identify with specificity the breach of contract of which Belmont complains." In Tri-City's view, the court's "failure makes it difficult, if not impossible to determine whether a breach occurred and if so whether the breach was material."

[¶11.] This appeal does not concern whether Tri-City materially breached the parties' lease. This is because Tri-City did not appeal the circuit court's ruling that Tri-City materially breached the parties' lease in *Tri-City I*. The breaches, as we recognized in *Tri-City I*, occurred because "Tri-City did not complete its allocated portion of the initial construction" and did not "deliver the premises in broom clean condition by August 1, 2006." *Id.* ¶ 3.

[¶12.] This appeal concerns whether the circuit court erred when it entered a judgment in favor of Belmont. On this issue, Tri-City argues that Belmont's duty to provide written notice of the alleged breach is a condition precedent to Belmont's counterclaim. Tri-City avers that the plain language of the parties' lease requires written notice and an opportunity to cure and "[n]either this Court nor the circuit court has the power to rewrite the parties' Lease."

[¶13.] It is undisputed that Belmont did not give Tri-City written notice of Tri-City's default. But the parties did not hinge Belmont's right to exercise its judicial remedies under the lease on whether Belmont gave Tri-City written notice of breach. Rather, the lease restricted Belmont's right to recover on whether Tri-City had been afforded the cure periods described in the lease. The lease provision provides: "Tenant may not exercise any remedies available to it under this Lease, at law or in equity until Landlord has been afforded the cure periods described in this Paragraph 48[.]" The cure period is 30 days. And, here, it is undisputed that Belmont did not attempt to exercise its legal remedies until months after Tri-City repudiated the lease by filing its lawsuit against Belmont for possession of the

premises and damages. At that point, written notice to Tri-City affording Tri-City an opportunity to cure would have been futile.

[¶14.] This Court recognizes that "[t]he law does not require futile acts." *Adrian v. McKinnie*, 2004 S.D. 84, ¶ 16, 684 N.W.2d 91, 99. Other courts have held that futility applies in the context of compliance with a notice-and-cure provision. *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014); *AAMCO Indus., Inc. v. DeWolf*, 250 N.W.2d 835, 840 (Minn. 1977); *Duncan v. Woodlawn Mfg., Ltd.*, 479 S.W.3d 886, 897 (Tex. App. 2015); *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 745 (Tex. App. 2012). For example, the Texas Court of Appeals recognized that repudiation of a lease indicates "the futility of a demand for performance" of the notice-and-cure provision. *Cheung-Loon*, 392 S.W.3d at 745. Indeed, "[w]here the breaching party has abandoned the contract and evidenced a clear and unequivocal intent not to complete the contract, a cure notice is not required." 5 Bruner & O'Connor Construction Law § 18:15.

[¶15.] Here, Tri-City's suit against Belmont for possession of the premises and damages indicates that it would be meaningless to require Belmont to provide Tri-City written notice affording the cure period. Tri-City repudiated any intention to perform under the lease, excusing the requirement that Belmont strictly comply with the notice-and-cure provision. The circuit court did not err when it entered judgment in favor of Belmont.

[¶16.] Both parties move for appellate attorney's fees under SDCL 15-26A-87.3. Their motions are accompanied by separate verified, itemized statements of legal services rendered. Belmont seeks $8,286.35 in attorney's fees, sales tax, and

costs. Tri-City seeks $7,452.70 in attorney's fees, sales tax, and costs. The parties do not dispute that the prevailing party is entitled to recover reasonable attorney's fees and costs under the terms of the lease. The specific provision provides that "the prevailing party in such action or proceeding shall be entitled to recover the reasonable fees of its attorneys and other costs of suit and its costs and attorney's fees in collecting any judgment or award," if "any action or proceeding is brought by any party to enforce or interpret the provisions of this Lease, or if any other action or proceeding is brought arising out of or relating to this Lease[.]" Because Belmont is the prevailing party, we award its requested fees.

[¶17.]    Affirmed.

[¶18.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.